OPINION
KIRSCHER, Bankruptcy Judge.
Yellow Express, LLC and Yellow Logistics, LLC (collectively, “appellants”) appeal from the bankruptcy court’s order sanctioning appellants $1,500 for violation of the automatic stay. Following prece *593 dent of the Ninth Circuit Court of Appeals (“Ninth Circuit”), first decided under the Bankruptcy Act of 1898, establishing that a civil contempt proceeding is not subject to the automatic stay, we REVERSE.
I. FACTS[1]
A. Prepetition Facts
In 2009, appellants filed an action in the Second Judicial District Court in Washoe County, Nevada, Case No. CV09-02392 against Mark Dingley (“debtor”) and two LLCs which he owned and controlled, M & M Tow & Transport, LLC and Superior Tow and Transport Service, LLC (collectively, “the LLCs”). The operative first amended complaint (“state court action”) alleged claims for claim and delivery, unjust enrichment, negligence, conversion and constructive fraud against debtor and the LLCs (collectively, “defendants”), based on the tow, storage and disposition of a semi-truck and trailer which belonged to Yellow Express and was leased to Yellow Logistics. The state court action included no alter ego allegations.
Initially, defendants defaulted and, following a prove-up hearing, judgment was entered against them in the total sum of $800,000. Subsequently, defendants moved to set aside the default judgment, which was granted. The state court then ordered that a hearing be held on sanctions for their willful failure to appear for depositions. At the hearing on June 26, 2012, the state court ordered defendants to pay sanctions to appellants in a sum not to exceed $6000 for attorneys’ fees and court reporter costs. Appellants subsequently filed an affidavit, which fixed the sanctions at $4078.35.
Defendants did not pay the sanctions. On March 25, 2013, appellants filed an application for an order to show cause regarding contempt for defendants’ noncompliance with the June 26, 2012 order. On April 2, 2013, the state court judge issued the order to show cause (“OSC”), ordering defendants to appear on April 25, 2013, to show cause why they should not be held in contempt for nonpayment.
B. Postpetition Facts
On April 8, 2013, debtor filed a Chapter 7[2] proceeding in the Nevada bankruptcy court. Although his membership interest in the LLCs was disclosed in debtor’s schedules, the LLCs did not file independent cases. Debtor scheduled appellants as creditors, and the court mailed notice of the filing of the bankruptcy case to appellants’ attorney Mark D. Wray (“Wray”) on April 11, 2013. On April 24, 2013, debtor’s state court counsel advised Wray of the bankruptcy filing and the automatic stay provided by § 362(a). On the following day, debtor’s bankruptcy attorney also advised Wray of the stay. Wray, on April 24, 2013, wrote debtor’s bankruptcy attorney acknowledging the notification of debt- or’s bankruptcy filing and inquiring why the OSC could not proceed given the law established by several noted cases. Despite the bankruptcy filing notices and given his response to opposing counsel, Wray declined to request the state court to vacate the OSC because: (1) the LLCs had not filed and did not receive the benefit of the stay; and (2) his preliminary research led him to believe that Ninth Circuit au *594 thority excepted a state court contempt proceeding from the automatic stay. In making this second assertion, he relied on David v. Hooker, Ltd., 560 F.2d 412 (9th Cir.1977), and Dumas v. Atwood (In re Dumas), 19 B.R. 676 (9th Cir. BAP 1982).
Debtor’s attorney responded that she did not have time to review his cases, but she continued to assert that the contempt hearing was a violation of the automatic stay and that the LLCs should get the benefit of debtor’s stay because he listed his interest in them in his schedules. She then filed a Notice of Bankruptcy Filing in the state court on the same day. The state court responded to that Notice by vacating the hearing. On the following day, it issued an order requiring briefing from the parties on the applicability of the automatic stay to the contempt hearing. Appellants’ brief was due ten days after the order and defendants’ brief was due in another ten days.
Appellants filed their state court brief timely on May 1, 2013, repeating the arguments they made to debtor’s counsel that the automatic stay did not apply to non-debtor co-defendants and that the contempt proceeding was excepted from the stay under Hooker and Dumas. Debtor did not file a brief in state court. Instead, on May 3, 2013, he filed a Motion to Enforce Stay and For Award of Mandatory Sanctions Pursuant to 11 U.S.C. § 362(k) in the bankruptcy court. Simultaneously, debtor filed an Ex Parte Application for Order Shortening Time, requesting an expedited hearing on the motion since his brief in state court was due. On May 6, 2013, the bankruptcy court granted the application for shortened time and set the hearing for May 10, 2013, with opposition papers due no later than noon, May 9, 2013.
In his Motion to Enforce Stay, debtor asserted that the prosecution of the contempt proceeding against him was a violation of § 362(a) and that the bankruptcy court filing divested the state court of jurisdiction to rule on the effect of the automatic stay on its proceedings, relying on Gruntz v. Cnty. of Los Angeles (In re Gruntz), 202 F.3d 1074, 1080 (9th Cir.2000) (en banc). Debtor’s motion further sought an order halting the state court action and an award of attorney’s fees and punitive damages based on appellants’ willful violation of the stay. Appellants timely[3] filed their Opposition to Motion to Enforce Stay, asserting the same arguments which they had previously made to debtor’s counsel. Relying on pre-Gruntz nonbinding authority, they contended that the state court had concurrent jurisdiction to determine whether the automatic stay applied to its proceedings. Next, pointing out that the LLCs were separate legal entities from debtor and that the contempt proceeding was against those entities, not his membership interest, appellants argued the automatic stay did not apply to the LLCs and the contempt proceeding should continue against them. As authority, they cited Groner v. Miller (In re Miller), 262 B.R. 499, 503 (9th Cir. BAP 2001), which in turn relied on Advanced Ribbons & Office Prods., Inc. v. U.S. Interstate Distrib., Inc. (In re Advanced Ribbons & Office Prods., Inc.), 125 B.R. 259, 263 (9th Cir. BAP 1991), and Marcus, Stowell & Beye Gov’t Sec., Inc. v. Jefferson Inv. Corp., 797 F.2d 227, 230 n. 4 (5th Cir.1986) (“The well established rule is that an automatic stay of judicial proceedings against one defen *595 dant does not apply to proceedings against co-defendants.”).
Appellants also contended that state court contempt proceedings were exempted from the automatic stay, citing again Hooker and Dumas and emphasizing to the bankruptcy court that debtor’s papers did not address the holding of these cases. Finally, appellants noted that the only action they had taken which allegedly violated the stay was filing the brief in the state court pursuant to that court’s request.
At the hearing in the bankruptcy court, debtor’s counsel, contrary to the position she had initially taken with appellants’ counsel, conceded that the stay did not apply to the LLCs. However, she argued that it did apply to debtor and that appellants had violated that stay by filing their brief in state court, which urged that court to proceed against debtor. She attempted to distinguish the Ninth Circuit authority excepting contempt proceedings from the stay by arguing they involved bad behavior and “criminal contempt.” Despite arguments to the contrary from Wray, the bankruptcy court announced categorically that appellants could not proceed against debtor and that it was prepared to issue an order staying the state court action against him with no other relief granted.
Debtor’s counsel then asserted that her client was broke and that she had incurred $1500 in attorney’s fees to stop the affirmative action against him. After reading the brief which appellants had filed in state court,[4] the court announced:
“The automatic stay in bankruptcy court does not shield Mr. Dingley from his willful disobedience of the Court’s lawful order.”[5] I find that you’re in contempt of court for urging the district court to extract from Mr. Dingley money for an order that was entered prebankruptcy which is certainly dischargeable. He can certainly be hauled into court for postbankruptcy conduct, but you cannot use the district court to try and recover money for contempt or otherwise that has occurred prior to the bankruptcy. I am awarding $1500 in sanctions against you.
Hr’g Tr. (May 10, 2014) 16:11-22. On May 17, 2013, the bankruptcy court entered the Order on Debtor’s Motion to Enforce Automatic Stay and For Award of Mandatory Sanctions Pursuant to 11 U.S.C. § 362(k). Appellants paid the sanction and timely appealed.
II.JURISDICTION
The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.
III.ISSUES
A. Whether the bankruptcy court erred in ruling that appellants violated the automatic stay; and
B. Whether the bankruptcy court erred in awarding sanctions of $1500.
IV.STANDARDS OF REVIEW
A bankruptcy court’s determination that the automatic stay was violated is a question of law subject to de novo review. Cal. Emp. Dev. Dep’t v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147, 1150 (9th Cir.1996).
*596 An award of sanctions is reviewed for abuse of discretion. Nash v. Clark Cnty. Dist. Attorney’s Office (In re Nash), 464 B.R. 874, 878 (9th Cir. BAP 2012). The bankruptcy court abuses its discretion when it fails to identify and apply “the correct legal rule to the relief requested,” or if its application of the correct legal standard was “(1) ‘illogical,’ (2) ‘implausible,’ or (3) without ‘support in inferences that may be drawn from the facts in the record.’ ” United States v. Hinkson, 585 F.3d 1247, 1262-63 (9th Cir.2009) (en banc).
Y. DISCUSSION[6]
A. The Automatic Stay and Sanctions for Willful Violation
The automatic stay of § 362(a), as asserted to be applicable here, provides:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debt- or or against property of the estate, of a judgment obtained before the commencement of the case under this title; ....
Section 362(k)(l) provides for an order for sanctions if a party willfully violates the stay:
[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys’ fees, and, in appropriate circumstances, may recover punitive damages.
Before imposing sanctions, the bankruptcy court must find that a violation of the stay was willful. The test for determining whether a violation of the automatic stay is willful is: (1) whether the appellants knew of the stay; and (2) whether the violation of the stay was intentional. Goichman v. Bloom (In re Bloom), 875 F.2d 224, 227 (9th Cir.1989). “Intentional” does not mean a specific subjective intent to violate the stay. Pinkstaff v. United States (In re Pinkstaff), 974 F.2d 113, 115 (9th Cir.1992). It is irrelevant whether the party believed in good faith that it had a right to the property at issue. In re Bloom, 875 F.2d at 227.
Willfulness is a question of fact reviewed for clear error. Safety Nat’l Cas. Corp. v. Kaiser Aluminum & Chem. Corp. (In re Kaiser Aluminum Corp.), 303 B.R. 299, 303 (D.Del.2003).
Appellants contend that the bankruptcy court erred: (1) because the stay did not apply to the state court civil contempt proceeding under applicable Ninth Circuit precedent; and (2) even if it did apply, the act of filing a brief in state court, which arguably had jurisdiction to determine whether the stay applied to its proceeding, was not a willful violation of the stay. We *597 address these arguments below, insofar as necessary to decide this case.
B. Exclusive Jurisdiction of the Bankruptcy Court
As a preliminary matter, appellants assert that the state court had concurrent jurisdiction with the bankruptcy court to decide whether the stay applied to its proceeding, citing Fid. Nat’l Title Ins. Co. v. Franklin (In re Franklin), 179 B.R. 913, 925 (Bankr.E.D.Cal.1995). Franklin is inapplicable to this issue as it dealt with subject matter jurisdiction of a non-core proceeding. To the contrary, the Ninth Circuit has definitively held that the applicability of the automatic stay is within the exclusive jurisdiction of the bankruptcy court. In Gruntz, 202 F.3d at 1088, the Ninth Circuit disregarded state court authorities and nonprecedential cases in ruling:
In sum, by virtue of the power vested in them by Congress, the federal courts have the final authority to determine the scope and applicability of the automatic stay. “The States cannot, in the exercise of control over local laws and practice, vest State courts with power to violate the supreme law of the land.”
Therefore, only the bankruptcy court had jurisdiction to determine whether the automatic stay applied to the state court contempt proceeding; the state court did not have concurrent jurisdiction. Id. at 1082-83.
C. Automatic Stay and State Court Contempt Proceedings
The Ninth Circuit has created a bright-line rule on whether the automatic stay applies to state court contempt proceedings, whether they are based on nonpayment of a monetary sanction or some other behavior which violates a state court order: if the sanction order “does not involve a determination [or collection] of the ultimate obligation of the bankrupt nor does it represent a ploy by a creditor to harass him” the automatic stay does not prevent the proceeding from going forward. Hooker, 560 F.2d at 418.
Hooker was decided under the Bankruptcy Act of 1898 and interpreted the scope of the stay provided by Rule 401(a) of the former Federal Rules of Bankruptcy Procedure which applied to cases filed under the Act. The question posed to the Ninth Circuit was whether the district court where a contempt proceeding was pending “had jurisdiction” to proceed after a bankruptcy petition had been filed. The order violated was not dissimilar to the order in this case: a discovery sanction which directed the defendants to answer interrogatories and pay attorney’s fees. The Ninth Circuit reasoned that the basic purpose of the stay was “to protect the bankrupt and to relieve the courts from pointless and needless litigation” over dis-chargeable debts. Id. at 417. Since the contempt proceeding at issue was ancillary to the underlying debt, the Ninth Circuit found the purpose of the stay was not implicated. Relying on old district court decisions[7] and 1A Collier ¶ 11.02 at 1147-48, the Ninth Circuit noted that the question was not a jurisdictional one since the stay suspended, rather than dismissed, the nonbankruptcy case. Id. at 418. Thus not every aspect of the proceeding was to be suspended, and a proceeding addressing disobedience of a state court order made prior to the stay was not meant to be suspended. Id. Moreover, the Ninth Circuit reasoned that the proceeding did not *598 “ ‘attempt in any way to interfere with the property which had passed to the control of the bankruptcy court; it sought merely to vindicate its dignity which had been affronted by the contumacious conduct of a person who ignored its order.’ ” Id.
The same issue was first addressed under the Bankruptcy Act of 1978 (the Code) and its automatic stay provided by § 362(a) by this panel in Dumas. Pre-bankruptcy, the debtor stipulated that he was in contempt of court for violation of a subpoena; a hearing for sentencing for the contempt was scheduled. Prior to the hearing, Dumas filed his bankruptcy petition and asserted that the automatic stay applied to the sentencing hearing. The Panel determined that no meaningful difference existed between the stay of Rule 401(a) and the automatic stay of § 362(a). It further found that, although the issue was raised as a jurisdictional one in Hooker, the court’s reasoning dealt with the propriety of the exercise of that jurisdiction when the stay might apply. Finally, it also found no distinction where a private party, rather than the court itself, initiated the contempt proceeding. Accordingly, it applied the holding of Hooker and concluded that the state court’s post-bankruptcy sentence for contempt was not stayed.
Appellants cited these authorities to debtor’s counsel and eventually to the bankruptcy court. Debtor’s counsel tried to distinguish them by claiming the contempt proceedings at issue in those cases were criminal and the holdings did not apply to civil contempt. As noted above, this argument was erroneous. The bankruptcy court did not acknowledge them at all, turning aside the arguments:
You can’t[8] proceed against whatever distributions may come to Mr. Dingley from them [the LLCs], but you cannot proceed against Mr. Dingley. And even if Judge Sattler orders you to proceed against Mr. Dingley, you will get a sanction from me because you’ve violated— you will have violated the automatic stay, and the fact — and Judge Sattler, if he proceeds against Dingley, he has violated the automatic stay....
Hr’g Tr. (May 10, 2013) 13:1-8.
I find that you’re in contempt of court for urging the district court to extract from Mr. Dingley money for an order that was entered prebankruptcy which is certainly dischargeable.
Id. at 16:14-17.
Other courts have followed Hooker and Dumas in this circuit. Most notably (and recently) the district court of Hawaii cited Hooker with approval in crafting a totality of the circumstances analysis of the “judicially created ... exception to § 362(a) for civil contempt proceedings in limited circumstances.” Kukui Gardens Corp. v. Holco Capital Grp., 675 F.Supp.2d 1016, 1026 (D.Haw.2009). The Kukui court distinguished between contempt proceedings intended to effectuate collection of a judgment and those intended to uphold the dignity of the court. Id. If the purpose of the contempt is to “punish a contemnor and uphold the dignity of the court,” it found the automatic stay does not apply, id.; however, in making this statement, it clarified that it was speaking of civil, not criminal contempt. Moreover, in addressing the test as totality of circumstances, the court actually relied on Lowery v. McIlroy & Millian (In re Lowery), 292 B.R. 645, 650 (Bankr.E.D.Mo.2003), rather than any Ninth Circuit precedent. The Hooker and Dumas precedent appears to *599 be more a bright-line test than a totality of circumstances test.
This judicially-crafted exception has been narrowly construed even by the Ninth Circuit. In Bloom, the federal contempt proceeding arose out of a post-judgment deposition that Goichman scheduled in advance of a hearing on an exemption claim asserted by Bloom to a garnishment. 875 F.2d at 225. Bloom filed her bankruptcy petition after the date set for the deposition, but prior to the scheduled date for the exemption claim hearing. Goich-man was notified of the bankruptcy petition; Bloom attended neither the deposition nor the exemption claim hearing. The district court, after the hearing, denied the exemption claim. Goichman moved for contempt against Bloom for, among other things, her nonattendance at the deposition. The district court held another hearing and ordered Bloom to convey partnership assets to Goichman as security for the judgment and fined Bloom $500 for contempt for her failure to attend the deposition. The district court made a minute entry for the fine; however, the fine was not included in the final order.
After various procedural maneuvers in district court, which are not relevant here, Bloom filed an adversary proceeding in the bankruptcy court asserting a stay violation. The bankruptcy court found Goich-man violated the stay by proceeding in district court after the bankruptcy filing. The district court affirmed and the Ninth Circuit also affirmed. Since the district court relief sought by Goichman was ordering the appointment of a receiver, ordering compliance with the prepetition consent decree, striking the exemption claim and ordering the transfer of assets of the bankruptcy estate to himself, these proceedings did violate the stay. Id. at 226-27.
This limitation on the breadth of Hooker was followed in the unpublished decision of the Federal Circuit, In re Long, 318 Fed.Appx. 891, 894 (Fed.Cir.2008), where the postbankruptcy contempt proceedings related to enforcement of the judgment not “improper conduct during litigation.”
As noted in Debtor’s brief, the Hooker/Dumas decisions have drawn sharp criticism in other bankruptcy courts. See Atkins v. Martinez (In re Atkins), 176 B.R. 998, 1005 (Bankr.D.Minn.1994) (“With all due respect to the courts that rendered these decisions [Hooker and Dumas], ... they are not well-founded.”); Dock C-Food, Ltd. v. Cherry (In re Cherry), 78 B.R. 65, 70 (Bankr.E .D.Pa.1987) (“We would be inclined to recognize as exemptions from the power of the stay only those specifically set forth in 11 U.S.C. § 362(b), not court-created exemptions in cases decided under the Bankruptcy Act-”). A common theme of these contrary views is that when Congress enacted the Bankruptcy Code in 1978, it provided specific statutory exceptions to the automatic stay in § 362(b), making the judicially created exemption under the Act improvident. Since Hooker was decided before the Code was adopted, if Congress had wished to include contempt proceedings under the exceptions to the stay, it could have done so in § 362(b).
Other courts have attempted to distinguish Hooker and Dumas. These courts assert that if the contempt proceeding is to deter wrongful conduct such as showing disrespect to the court or filing a frivolous appeal, such contempt proceeding should be allowed to proceed, whereas if a creditor is merely attempting to collect money due under a court order it should be stayed. See In re Musaelian, 286 B.R. 781, 782 (Bankr.N.D.Cal.2002). The Mu-saelian court said the state court “alone” would not be stayed if the contempt pro *600 ceeding was for public policy purposes, but that if the creditor or his attorneys participated “in any way other than pursuant to [a] direct and unsolicited order of the state court, they risk liability for violation of the automatic stay.” Id. The Musaelian court further denied relief from stay so the creditor could not pursue collection of any monetary amount associated with any private interest furthered by pursuing any discovery sanction order. However, Hooker and Dumas made no such distinction between a public policy and a private interest analysis, since both cases involved monetary sanction orders arising from contempt proceedings and both authorized recovery of the monetary sanctions associated with the discovery violations.
Still other courts have excepted non-bankruptcy contempt proceedings arising from sanction orders by applying one of the statutory exceptions provided in § 362(b). The Seventh Circuit in Alpern v. Lieb, 11 F.3d 689, 690 (7th Cir.1993), relied on the police power exception of § 362(b)(4) when determining that enforcement of a Civil Rule 11 sanction was not stayed, even when the Civil Rule 11 motion was brought by a private party. Similarly, the Ninth Circuit in Berg v. Good Samaritan Hosp. (In re Berg), 230 F.3d 1165 (9th Cir.2000), used the police power exception when determining that an action to collect an attorney sanction for filing a frivolous appeal was not subject to the automatic stay. In both Alpem and Berg the payment at issue was to a private party for attorney’s fees, not the court.
Although we recognize these different approaches to the issue before us, the precedent of this circuit is set by Hooker as followed post-Code by Dumas: a contempt action for nonpayment of court-ordered sanctions is exempted from the automatic stay unless the proceeding turns on the determination or collection of the underlying judgment. We acknowledge the strength of the points made in the concurrence. We ultimately determine, however, that it is for the Ninth Circuit to make the determination as to the continued validity of the Hooker bright-line test.
Applying this rule here, the contempt proceeding in the Nevada state court was not subject to the stay. Debtor had been ordered to pay attorney’s fees and costs to Appellants due to his noncooperation with discovery. The relevant civil contempt proceeding arose from his nonpayment under that order. These facts parallel those in Hooker and Dumas which provide the rule of law.
Consequently, the bankruptcy judge erred when he found appellants willfully violated the automatic stay; in this context, no stay existed to violate.[9] The sanction award also was error.
VI. CONCLUSION
For the reasons set forth above, we REVERSE the finding of a violation of the automatic stay and the order to pay sanctions.

. The facts are largely undisputed and are drawn from debtor’s Motion to Enforce Automatic Stay and appellants’ Opposition to Motion to Enforce Automatic Stay.

. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule” references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule” refers to the Federal Rules of Civil Procedure.

. Wray complained that he had asked debt- or’s attorney for an extension of time to file but that his request fell on deaf ears.

. The bankruptcy judge said his court was very "green” and he did not print out the papers. When he learned the state court brief was attached as an exhibit to the Motion, he read it while on the bench.

. The court apparently read from the brief.

. We acknowledge debtor submitted a letter pursuant to Fed. R.App. P. 28(j). Appellants responded to debtor’s letter. We reviewed the submissions and have concluded, given the record and issues before us, that the submitted case involves issues we do not reach in this Opinion.

. In re Hall, 170 F. 721 (S.D.N.Y.1909), and In re Spagat, 4 F.Supp. 926, 927 (S.D.N.Y. 1933).

. The bankruptcy court may have meant "can," given the context of the discussion between counsel and the bankruptcy court and the ability to pursue postpetition chapter 7 distributions from the LLCs.

. The bankruptcy court's oral findings on the willful nature of the violation are sparse. However, since no violation occurred, we do not address the sufficiency of these findings.